**Ann B. LOVELL, etc.,**
**Plaintiff, Appellee,**

v.

**The ONE BANCORP, et al.,**
**Defendants, Appellees.**

**Appeal of Frederick W. PAPE,**
**Jr., Defendant.**

**No. 88–1915.**

United States Court of Appeals,
First Circuit.

Heard Feb. 27, 1989.

Decided June 22, 1989.

* Of the District of Puerto Rico, sitting by designa-

Rufus E. Brown with whom Jay S. Blumenkopf and Drummond Woodsum Plimpton & MacMahon were on brief, for defendant, appellant.

John S. Campbell with whom Richard E. Poulos and Poulos, Campbell & Zendzian were on brief, for plaintiff, appellee Ann B. Lovell.

Before CAMPBELL, Chief Judge, COFFIN, Senior Circuit Judge, and FUSTE,* District Judge.

LEVIN H. CAMPBELL, Chief Judge.

Frederick W. Pape, Jr., defendant-appellant, has filed this interlocutory appeal from the district court's denial of his claim of qualified immunity. Because we find that Pape, a private party, has no right to an interlocutory appeal under the circumstances of this case, we dismiss his appeal for lack of jurisdiction.

I.

In 1984, the board of trustees of the Maine Savings Bank ("Bank") adopted a Plan of Conversion ("Plan") to convert Bank from a mutual association into a stock corporation pursuant to Me.Rev.Stat. Ann. tit. 9–B, § 344 (1980) and the Federal Home Loan Bank Board's regulations on mutual-to-stock conversions, 12 C.F.R.

tion.

§ 563b (1988).[1] Under the Plan, a holding company, The One Bancorp ("Bancorp"), was created to hold Bank's capital stock after conversion. Bancorp would then raise capital through two offerings of Bank's stock, one to subscription holders and one to the public. The plan included Bank's depositors among these subscription holders, giving them nontransferable subscription rights to buy Bank's stock.

The Plan was approved by the Federal Reserve Board and also conditionally approved by the Superintendent of Maine's Bureau of Banking. Eligible depositors were notified of the Superintendent's conditional approval, the details of the conversion plan, and various rights they had regarding the conversion, including their right to vote for or against conversion at an upcoming meeting. On May 11, 1984, eligible depositors approved the conversion. After Bancorp conducted the two stock offerings, the Superintendent issued a certificate declaring the conversion final.

Plaintiff, Ann B. Lovell,[2] brought this action under 42 U.S.C. § 1983 (1982) challenging Bank's conversion, the process by which it was approved, and the Maine statutes that authorized it. The complaint named as defendants Bank, Bancorp, Robert Masterton, the chief executive officer and director of Bank and Bancorp, and the appellant, Frederick Pape, the chairman of the executive committee of Bank's and Bancorp's boards of directors. The complaint essentially asserted that as a depositor in a preconversion mutual association, plaintiff "owned" a portion of the association proportionate to his deposits there, and thus had a protected property interest for which he was entitled to be compensated. Plaintiff claimed that the conversion deprived him of that property interest without affording him due process, equal protection or the protection of the contract clause of the federal Constitution. The complaint alleged that the actions of the private defendants constituted "state action" because they had acted jointly with the Superintendent who gave them substantial encouragement and assistance, and because defendants utilized state procedures, statutes, and orders of state officials in allegedly violating plaintiff's constitutional rights. Plaintiff also asserted various pendent state claims.[3]

Pape moved under Fed.R.Civ.P. 12(c) for judgment on the pleadings. Among the various arguments advanced in his motion, Pape argued that he was entitled to qualified immunity from plaintiff's claims. While not expressly addressing Pape's qualified immunity claim, the district court denied Pape's Rule 12(c) motion. *Lovell v. One Bancorp*, 690 F.Supp. 1090 (D.Me. 1988). Pape has filed this interlocutory appeal from the district court's denial of his qualified immunity claim. Plaintiff has moved to dismiss this appeal for lack of jurisdiction.

## II.

This court's jurisdiction stems primarily from 28 U.S.C. § 1291 (1982), which provides that the courts of appeals may review "final decisions of the district courts of the United States." The Supreme Court has explained the importance and purpose of the "finality" requirement embodied in the statute:

> The statutory requirement of a "final decision" means that "a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 [101 S.Ct. 669, 673, 66 L.Ed.2d 571] (1981). As the Court noted in *Firestone*, the final judgment rule promotes efficient judicial ad-

---

1. The Superintendent of Maine's Bureau of Banking adopted these federal regulations to govern in-state conversions.

2. The original plaintiff, John M. Lovell, Sr., died. Ann Lovell was subsequently substituted as John Lovell's personal representative pursuant to Fed.R.Civ.P. 25(a)(1). Plaintiff not only brought this action in his individual capacity, but also purported to bring this action as a representative of a class consisting of all eligible account holders of Bank.

3. A fuller description of the background of this case and plaintiff's claims can be found in the district court's opinion. *Lovell v. One Bancorp*, 690 F.Supp. 1090 (D.Me.1988).

ministration while at the same time emphasizing the deference appellate courts owe to the district judge's decisions on the many questions of law and fact that arise before judgment. *Ibid.; Flanagan v. United States,* 465 U.S. [259], at 263–264 [104 S.Ct. 1051, 1054, 79 L.Ed.2d 288 (1984)]. Immediate review of every trial court ruling, while permitting more prompt correction of erroneous decisions, would impose unreasonable disruption, delay, and expense. It would also undermine the ability of district judges to supervise litigation. In § 1291 Congress expressed a preference that some erroneous trial court rulings go uncorrected until the appeal of a final judgment, rather than having litigation punctuated by "piecemeal appellate review of trial court decisions which do not terminate the litigation." *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 265 [102 S.Ct. 3081, 3082, 73 L.Ed.2d 754] (1982). *Richardson–Merrell Inc. v. Koller,* 472 U.S. 424, 429–30, 105 S.Ct. 2757, 2760–61, 86 L.Ed.2d 340 (1985).

The Supreme Court has recognized a "narrow exception" to the final judgment rule, known as the collateral order doctrine, for a " 'small class' of prejudgment orders which 'finally determine claims of right separable from, and collateral to, rights asserted in the action, [and are] too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.' " *Id.* at 430, 105 S.Ct. at 2761 (quoting *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949)). *See also In re Recticel Foam Corp.,* 859 F.2d 1000, 1003–04 (1st Cir. 1988). Pape argues that the district court's denial of his qualified immunity claim falls within the narrow confines of the collateral order doctrine and thus provides the basis for this interlocutory appeal. In support of

his argument, he cites *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

In *Forsyth,* the Supreme Court held that a district court's denial of a government official's claim of qualified immunity fell within the collateral order doctrine, and thus gave the government official the right to an immediate appeal. The Court's holding was based primarily on its ruling that a government official's right to qualified immunity embodies not only an immunity from damages but also an entitlement not to stand trial. *Id.* at 525–27, 105 S.Ct. at 2814–16. *See also Harlow v. Fitzgerald,* 457 U.S. 800, 813–19, 102 S.Ct. 2727, 2735–39, 73 L.Ed.2d 396 (1982). The Court reasoned that this entitlement not to stand trial was necessary to avoid the "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service" caused by the burdens of litigation which "can be peculiarly disruptive of effective government." *Forsyth,* 472 U.S. at 526, 105 S.Ct. at 2815 (quoting *Harlow,* 457 U.S. at 816–17, 102 S.Ct. at 2737–38). Because an entitlement not to stand trial would be "effectively lost if a case is erroneously permitted to go to trial," the Court held that the denial of qualified immunity should be immediately appealable. *Id.* at 526–27, 105 S.Ct. at 2815–16.

We do not believe that *Forsyth* 's rationale applies to Pape. *Forsyth,* as indicated above, turned upon the harm done to effective government and to government officials when the right of the official not to stand trial was violated. These concerns are not present in this case. Pape is a private party, not a government official. His allegedly unlawful actions did not take place in the course of the performance of public duties. Rather, he was an officer in a private company engaged in private, commercial activity.[4] If a private party like

---

4. This case does not concern a private defendant whose allegedly wrongful conduct arises from acts that were required to be performed under a contract with a governmental body to perform a governmental function. *See DeVargas v. Mason & Hanger–Silas Mason Co.,* 844

F.2d 714 (10th Cir.1988) (holding that such a defendant is entitled to qualified immunity and a right to an interlocutory appeal). Nor does it concern an appeal in which one of the appellants is a government official entitled to an interlocutory appeal under *Forsyth. See Myers*

Pape is entitled to bypass the rule against piecemeal review, one might wonder why any private person raising unsuccessfully a defense which, if meritorious, would confer victory prior to trial, should not also be granted an interlocutory appeal. Yet to do so would be to undermine, almost beyond repair, the policies that support the finality principle.

To be sure, Pape is alleged to have engaged in state action. Concern has been expressed "that private individuals who innocently make use of seemingly valid state laws would be responsible, if the law is subsequently held to be unconstitutional, for the consequences of their actions." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 n. 23, 102 S.Ct. 2744, 2756 n. 23, 73 L.Ed.2d 482 (1982). Even assuming, however, that this concern justifies extending to private "state actors" a qualified immunity from damages similar to that enjoyed by government officials, a position which would require us to distinguish or modify our decision in *Downs v. Sawtelle*, 574 F.2d 1 (1st Cir.), *cert. denied*, 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978),[5] this does not mean that a private defendant has a corollary right to an immediate appeal from a denial of qualified immunity. We think it apparent from the reasoning of *Harlow* and *Forsyth* that a government official's qualified immunity from suit and right to an interlocutory appeal stem from a concern regarding the disruptive effect litigation has on effective government. Because this concern is not present in this case and because of the vital functions served by the

final judgment rule, we hold that the order appealed from is not final under 28 U.S.C. § 1291. *Accord Chicago & North Western Transportation Co. v. Ulery*, 787 F.2d 1239 (8th Cir.1986) (private party not entitled to immediate appeal from denial of qualified immunity). We consequently dismiss Pape's appeal for lack of appellate jurisdiction.

*So ordered.*

---

*v. Morris*, 810 F.2d 1437, 1441 (8th Cir.) (allowing private party to bring interlocutory appeal of denial of qualified immunity in concert with public officials appealing same issue), *cert. denied*, — U.S. —, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). We express no view as to whether a private defendant would be entitled to an interlocutory appeal from a denial of a qualified immunity claim under the circumstances presented in *DeVargas* or *Myers*.

**5.** In *Downs*, this court held that a private party, alleged to have conspired with government officials in violating plaintiff's constitutional rights, was not entitled to qualified immunity. 574 F.2d at 15–16. Pape has argued that *Downs* should be distinguished or modified in light of the subsequent dictum in *Lugar*, 457 U.S. at 942

n. 23, 102 S.Ct. at 2756 n. 23, that it may be appropriate to afford private defendants some sort of qualified immunity defense when the state action they allegedly engage in is merely the innocent use of seemingly valid state laws subsequently held to be unconstitutional. Several circuits have indeed extended the qualified immunity defense to private defendants in certain circumstances. *See, e.g., DeVargas*, 844 F.2d at 721–22; *Buller v. Buechler*, 706 F.2d 844 (8th Cir.1983); *Folsom Investment Co. v. Moore*, 681 F.2d 1032, 1037 (5th Cir.1982). *But see Howerton v. Gabica*, 708 F.2d 380, 385 n. 10 (9th Cir.1983). As we lack jurisdiction over this appeal, we do not address whether Pape is entitled to qualified immunity or whether *Downs* is distinguishable or should be modified.