**Katherine CRIPPA, etc., et al.,
Plaintiffs, Appellees,**

v.

**Michael S. DUKAKIS, etc., et al.,
Defendants, Appellees.**

**Appeal of Craig FOX, etc., Defendant.**

**No. 89–1883.**

United States Court of Appeals,
First Circuit.

Heard Feb. 5, 1990.

Decided June 15, 1990.

As Amended June 21, 1990.

Myles W. McDonough (argued) with whom Sloane & Walsh, Boston, Mass., was on brief for defendant.

Lydia J. Luz with whom Alice J. Klein and Keane & Klein, Boston, Mass., were on brief for plaintiffs-appellees.

Before CAMPBELL, Chief Judge, and BOWNES and CYR, Circuit Judges.

CYR, Circuit Judge.

On July 5, 1982, plaintiff-appellee Katherine Crippa advised appellant Craig Fox, and a supervisor of investigations for the Massachusetts Department of Social Services ("DSS"), that she was fearful she would harm her three children. After alerting the Crippa children to the potential danger, Fox assisted their placement in a foster home, where they remained for eleven months before being returned to their mother.

On June 28, 1985, Crippa and her children brought a civil rights action, *see* 42 U.S.C. § 1983, for declaratory and injunctive relief, as well as damages, against various Massachusetts officials, DSS employees, and defendant Fox, for failure to develop and review "service plans" for the foster care of the Crippa children.[1] Fox affirmatively asserted qualified immunity and moved to dismiss the section 1983 claim. The district court considered matters outside the pleadings, *see* Fed.R.Civ.P. 12(b)(6) & 56, and denied summary judgment on the qualified immunity claim on the ground that material facts remained in dispute, principally as to whether Fox was in any capacity or manner responsible for developing or reviewing foster care service plans in behalf of DSS.[2]

## DISCUSSION

The core preoccupation of the parties on appeal centers on whether any responsibility devolved upon Fox for the preparation and review of foster care service plans for the Crippa children.[3] Yet notwithstanding the fact that these proceedings have extended for nearly five years since the lawsuit was commenced, and even though both the qualified immunity claim and the merits of the section 1983 claim depend upon precisely such evidence, only the dimmest evidential outlines of Fox's relationship and responsibilities with the DSS are discernible in the aftermath of the parties' tactical posturing. *See, e.g.*, notes 6–8 & accompanying text. We cannot mistake the reality that both parties have been reluctant to abandon their supine litigation stance out of concern that material disclosures regarding any responsibility Fox may have had in these matters

---

1. The only cause of action implicated on appeal is the section 1983 claim against appellant Fox set forth in paragraph 39 of the amended complaint.

> 39. By failing to develop and periodically review service plans and by failing to provide social services to prevent the initial or ongoing need for foster care by improving conditions in the natural home and defendants have violated the due process clause of the 14th Amendement (sic) to the United States Constitution and 42 U.S.C. section 609 (sic) and 45 C.F.R. 5220.40(b)(3) (sic), and the Constitution of the Commonwealth.

2. The district court denied Fox's companion motion for summary judgment on the merits of the section 1983 claim as well. The disposition of that motion is not now before us. *See Newman v. Massachusetts*, 884 F.2d 19, 22 (1st Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1132, 107 L.Ed.2d 1037 (1990).

3. At the time of these events the Social Security Act, 42 U.S.C. §§ 301–1397, including its provisions relating to the Aid to Families with Dependent Children–Foster Care program ["AFDC–

FC"], 42 U.S.C. §§ 601–676 (Title IV), imposed responsibility for the development and review of "service plans" on the particular state agency designated by each state participating in the AFDC–FC program. *See* 42 U.S.C. § 601 (federal funds available only to states with federally approved "State plans for aid and services to needy families with children"); 42 U.S.C. § 602(a) ("State plan ... must ... (20) provide for aid to families with dependent children in the form of foster care in accordance with section 608 of this title"); 42 U.S.C. § 608(f) (State plan must provide for "(1) development of a plan for each [foster child, *see* 42 U.S.C. 608(a) ] (including periodic review of the necessity for ... foster ... home or ... [institutional] care) to assure ... proper care and ... services ... to improve the conditions in the home....)". *See also King v. Smith*, 392 U.S. 309, 316–17, 88 S.Ct. 2128, 2132–33, 20 L.Ed.2d 1118 (1968) (state electing to accept AFDC funds must submit AFDC plan and conform to SSA). At the time in question, Massachusetts law placed responsibility for these matters with the DSS. *See* Mass. Gen.L. ch. 18B, § 2. *See, e.g., Lynch v. Dukakis*, 719 F.2d 504, 512–13 (1st Cir.1983).

might jeopardize their respective positions on the merits of the section 1983 claim or on Fox's qualified immunity claim. On the other hand, we perceive the distinctly different and more immediate problem that their tactical occultation has indeed succeeded in obscuring the foundational facts necessary to support our exercise of interlocutory jurisdiction. Consequently, we now note our lack of jurisdiction, *see Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986), though, by so doing, we must let supine canine recline as it were, *cf. Unwin v. Campbell*, 863 F.2d 124, 132 n. 5 (1st Cir.1988).[4]

We may entertain the present appeal only if it is within the purview of the collateral order doctrine enunciated in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), more recently extended to encompass an appeal from a pretrial order denying a claim of qualified immunity in *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). *Forsyth* is rooted in the public policies served by preventing " 'distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service [which] ... can be particularly disruptive of effective government.' " *Id.* at 526, 105 S.Ct. at 2815 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 816–17, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982)). The public policies fostered by according government officials qualified immunity from suit are frustrated when "a case is erroneously permitted to go to trial." *Forsyth*, 472 U.S. at 526, 105 S.Ct. at

2815. On the other hand it cannot be doubted that the prosecution of a qualified immunity claim must rest with the party asserting it. *Cf. Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982) (qualified immunity must be pleaded by defendant official). Like any other appellant, Fox invites the dismissal of his interlocutory appeal unless its jurisdictional requirements are met. *See, e.g., In re Recticel Foam Corp.*, 859 F.2d 1000, 1003 (1st Cir.1988) (district court order overruling objection to case management order does not come within final judgment rule or collateral order doctrine) (" 'A petitioner, we think, has the burden of making the specialized showing needed to complete the arduous climb over the jurisdictional threshold.' ") (quoting *Bath Iron Works*, 853 F.2d at 14).

Courts of appeals, including our own, determine their jurisdiction to entertain an interlocutory appeal from a denial of a claim of qualified immunity by focusing on the position and function of the party asserting the immunity claim. For example, in *Lovell v. One Bancorp*, 878 F.2d 10 (1st Cir.1989), the appellant was a *private* party, chairman of the executive committees of Maine Savings Bank and its holding company, who asserted qualified immunity from suit for alleged violations of state banking laws and regulations relating to the conversion of Maine Savings Bank from a mutual association to a stock corporation. In *Lovell* the appellant's "allegedly unlawful actions did not take place in the course of the performance of *public* duties. Rather, he was an officer in a

---

4. As a consequence, the tantalizing issue just beyond our jurisdictional purview, *see Director, OWCP v. Bath Iron Works Corp.*, 853 F.2d 11, 13 (1st Cir.1988), must await tender of the customary jurisdictional fare, *see Unwin v. Campbell*, 863 F.2d 124, 132 n. 5 (1st Cir.1988); *Feliciano–Angulo v. Rivera–Cruz*, 858 F.2d 40, 48 n. 8 (1st Cir.1988). *See infra* note 9. Were it to have appeared that we have jurisdiction, we may have been required to decide whose turn it is to produce the next tidbit of evidence as to any legal responsibility Fox may have had, by virtue of his employment, to prepare or review foster care service plans. *Compare Newman*, 884 F.2d at 22 (where we declined "to depart from our now well-established practice of limiting our interlocutory review to the issue of qualified

immunity") *with Unwin v. Campbell*, 863 F.2d at 133 n. 9 (" '[T]he merits' and the issue of qualified immunity are inexorably intertwined in this instance. To afford the two defendants immunity only if the law had been a little less favorable to them would seem ridiculous."). Ultimately, of course, in order to sustain their burden on the merits of the section 1983 claim, plaintiffs would have to establish the existence of a legal duty on the part of defendant Fox. As the present decision demonstrates, however, a defendant claiming qualified immunity must be able to point to sufficient evidence to support the exercise of interlocutory jurisdiction, or risk dismissal of the appeal. *Cf. Unwin v. Campbell*, 863 F.2d at 136–37.

private company engaged in private, commercial activity." *Id.* at 12 (emphasis added). *Lovell* did not "concern a private defendant whose allegedly wrongful conduct arises from acts that were required to be performed under a contract with a governmental body to perform a governmental function." *Id.* at 12–13 n. 4. Thus, we expressed "no view as to whether a private defendant would be entitled to an interlocutory appeal from a denial of a qualified immunity claim under the circumstances presented in *DeVargas*...."[5] *Id.* Therefore, we dismissed the interlocutory appeal in *Lovell* for lack of appellate jurisdiction. *Id.* at 13. *See also Downs v. Sawtelle,* 574 F.2d 1, 14 (1st Cir.) ("[I]n the absence of any factual development as to the nature of the [social worker] positions involved and the range of responsibilities committed to these defendants, it would be inappropriate at this point for this court to attempt to answer ... [the] crucial question [whether defendants are protected by qualified immunity.]"), *cert. denied,* 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978).

The original complaint identified Fox as a party defendant being sued "[i]ndividually and in his capacity as an employee of the Commonwealth."[6] The amended complaint alleges, however, that "Fox is or was a clinical social worker *attached* to the Pittsfield office of the Department of Social Services and at all times relevant was responsible in his capacity as social worker for acts and omissions occurring with regard to the plaintiffs." (emphasis added).

Fox does not deny that he listened to Katherine Crippa's expressions of concern that she might harm her children, warned the children, and assisted with their foster care placement. *Compare Unwin v. Campbell,* 863 F.2d at 133. Instead, Fox uninformatively states that he provided services to the DSS pursuant to contract, with no indication as to the nature of the contract between his employer and DSS and only the sketchiest indication as to the nature of his employment responsibilities.[7]

An immunity claimant's right to an interlocutory appeal remains a narrow exception to the final judgment rule, available only to government officials and, conceivably (a matter we have yet to consider), their functional equivalent. Where an appellant has no official (or equivalent) status, *Lovell,* 878 F.2d at 12, or where the record does not enable us to determine a cognizable basis for the assertion of appellate jurisdiction, as in the present case, we will not entertain an interlocutory appeal from the denial of an immunity claim on the basis of its label alone.

We recognize that dismissal of the interlocutory appeal entails some slight risk that the important public policies served by entitling eligible defendants to appeal a pretrial denial of an immunity claim may be frustrated for a while longer. We conclude, however, that it would be impermissible as a matter of law, inappropriate from a public policy standpoint, and out of step with our adversary system, not to note our lack of interlocutory jurisdiction. There

---

**5.** In *DeVargas v. Mason & Hanger–Silas Mason Co.,* 844 F.2d 714, 715 (10th Cir.1988), a one-eyed security guard was refused employment with a private company which had contracted to provide security services at the Los Alamos National Laboratory. The private defendants defended on the ground that a Federal Interim Management Directive specifically prohibited the hiring of one-eyed security guards. *Id.* at 716. The Tenth Circuit held that "private parties acting pursuant to contractual duties may bring interlocutory appeals from the denial of qualified immunity." *Id.* at 717. Whether a private party in the circumstances of the security guard in *DeVargas* is entitled to take an interlocutory appeal from a district court order denying a claim of qualified immunity is an issue not now before us. The present record apprises us neither of the terms of any DSS contract, nor of Fox's responsibilities with DSS.

**6.** The Massachusetts Attorney General, representing all defendants except Fox, informed the district court that Fox was not a state employee, but was employed by a private agency under contract to the Commonwealth. The Attorney General gave that as the reason that Fox was being represented by private counsel, rather than by the Attorney General.

**7.** Fox states that "at all times relevant to this action he was employed by the Judge Baker Guidance Center and provided services to DSS pursuant to a contract between the Judge Baker Center and DSS." The only other clue to the nature of Fox's employment responsibilities is adverted to by plaintiffs in their brief on appeal. *See infra* note 8.

can be no sound basis for assuming an essential element of the defendant's qualified immunity claim, much less a jurisdictional one, when it would appear a simple matter for Fox to demonstrate it unless of course the undisclosed facts are inconducive.[8] Furthermore, insubstantial qualified immunity claims, *see Unwin v. Campbell,* 863 F.2d at 136–37; *see also infra* note 9, as well as substantial ones, *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738, are to be screened out at an early stage in the litigation process as a matter of sound public policy; certainly so in these circumstances where a need for further development of the record persists almost five years after the commencement of the action.[9]

## CONCLUSION

We are without jurisdiction to entertain an interlocutory appeal from the denial of the motion for summary judgment on the immunity claim because we are unable to ascertain on the present record a legal duty on the part of appellant Fox to perform any governmental function implicated by the section 1983 claim, as either a state official or a private party.

*The appeal is dismissed for lack of jurisdiction. The parties are to bear their own costs.*

DISMISSED.

---

**8.** The reticence to disclose evidence of Fox's contractual duties in these matters continues unabated on appeal. Fox contends that Crippa has not provided sufficient evidence of Fox's employment relationship with the Commonwealth. "Although Crippa has alleged that Fox was attached to [DSS] and refers to him as a state employee she has not come up with evidence, as opposed to mere allegations, to establish such a relationship between him and the state." Appellant's Brief at 17–18 n. 6. (citations omitted). The Crippas respond in kind. By case law, Fox is not entitled to qualified immunity unless he was acting in his capacity as a governmental official. *See Harlow v. Fitzgerald,* 457 U.S. 800 [102 S.Ct. 2727, 73 L.Ed.2d 396]. Thus, footnote 6 of the Fox brief concerning the issue of whether the Crippas have provided sufficient evidence to establish an agency relationship between Fox and DSS is perplexing. *See* Fox brief, pages 17–18. Fox cannot simultaneously attempt to cloak himself in the defense of governmental qualified immunity and deny that he was acting as or on behalf of DSS during the actions in question. *Fox has not asserted by affidavit that he was not attached to DSS.* In fact, this statement would have been contrary to his September 1989 deposition testimony that in July, 1982, he devoted approximately thirty (30) hours per week to providing consultation services to DSS. (September 12, 1989 Deposition Transcript of Craig Fox, pages 12–13). Appellees' Brief at 13 n. 5 (emphasis added).

**9.** "We also caution that regardless of the number of immunity motions made at various stages of a case in the district court, only one interlocutory appeal to this court will normally be allowed." *Unwin v. Campbell,* 863 F.2d at 132 n. 5 (citing *Feliciano–Angulo,* 858 F.2d at 48 n. 8).