**Lydia FELIX De SANTANA,
etc., Plaintiff, Appellee,**

v.

**Jose Eligio VELEZ and Elba Zayas,
Defendants, Appellants.**

**No. 91–1563.**

United States Court of Appeals,
First Circuit.

Heard Nov. 7, 1991.

Decided Feb. 6, 1992.

Sheldon Nahmod, Chicago, Ill., with whom Cancio, Nadal & Rivera, San Juan, P.R., was on brief, for defendants, appellants.

A.J. Amadeo Murga, Santurce, P.R., for plaintiff, appellee.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and SKINNER,* District Judge.

BOWNES, Senior Circuit Judge.

This appeal stems from a 42 U.S.C. § 1983 malicious prosecution action that plaintiff-appellee, Lydia Felix de Santana, brought against the defendants-appellants, José Eligio Vélez and Elba Zayas. The appellants appeal the denial of their motion for summary judgment. They make two contentions: 1) that they were entitled to raise the defense of qualified immunity; and 2) that they did not violate § 1983 malicious prosecution law. Because the appellants bring an interlocutory appeal, we must first determine whether we have jurisdiction to entertain their appeal. We hold that we do not.

---

* Of the District of Massachusetts, sitting by designation.

■ The question of our jurisdiction requires us to review the district court's ruling that the defendants were not entitled to raise the defense of qualified immunity. We, therefore, follow the customary standard of review applicable to denials of summary judgment. Our review in such cases is plenary. *Cookish v. Powell,* 945 F.2d 441, 443 (1st Cir.1991). We review the facts and draw all reasonable inferences therefrom in the light most favorable to the nonmovant. *Morales v. Ramirez,* 906 F.2d 784, 785 (1st Cir.1990). The question before us is whether the district court erred in finding as a matter of law that the defendants did not belong to the class of people entitled to raise the defense of qualified immunity.

### BACKGROUND

Felix de Santana is the former Treasurer–Administrator of Cooperativa de Ahorro y Credito de la Associacion de Maestros de Puerto Rico ("EDUCOOP"), a cooperative organized under Puerto Rico law. Vélez serves as the President of EDUCOOP and Zayas is his assistant. Felix de Santana alleges that the defendants conspired with Puerto Rico Assistant District Attorney Acevedo Padilla to remove her from her position at EDUCOOP and to obtain control of EDUCOOP by bringing baseless criminal charges against her.

On September 16, 1987, Felix de Santana was indicted on charges of perjury and threatening a witness. She was arrested, tried, and subsequently acquitted of the charges.[1] In the course of these events, Felix de Santana was removed from her position as Treasurer–Administrator, lost her job at a bank, and was also removed from her position on the Board of Directors of the Puerto Rico Energy Authority.

In August 1989, Felix de Santana sued Vélez and Zayas under 42 U.S.C. § 1983 for malicious prosecution and under 18 U.S.C. § 1961 for violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"). She alleged that the prosecutor, Padilla, allowed Zayas to take control of the investigation against her. She contended that Zayas engaged in the following activities: deciding which witnesses would be subpoenaed; being present during the questioning of witnesses and controlling the questioning; transcribing the witnesses' interviews; taking stationery from the Commonwealth's Justice Department and preparing documents on that stationery which were later delivered to the Justice Department.

The defendants moved for summary judgment on various grounds. They contended that: 1) Felix de Santana failed to show a pattern of racketeering activity as to the RICO claim; 2) the malicious prosecution claim was precluded by prior federal litigation; 3) the § 1983 claim was barred by the applicable one-year statute of limitations under Puerto Rico law; 4) the § 1983 claim should be dismissed because of the availability of adequate remedies under Puerto Rico law; 5) the alleged conduct did not shock the conscience as required for a substantive due process violation; 6) Felix de Santana failed to properly allege action under color of state law; and 7) the defendants were protected by qualified immunity.

The court granted the defendants' motion for summary judgment as to the RICO claim. It also allowed Felix de Santana twenty days to amend her complaint. The court dismissed the § 1983 claim insofar as it was premised on procedural due process grounds because of the availability of an adequate Puerto Rico remedy. The court denied the motion for summary judgment

---

1. Felix de Santana's complaint states,

Almost two (2) years after being charged, plaintiff Lydia Felix de Santana was acquitted by the court on the basis that there was no evidence *at all* to support that she had committed any crime. Presiding Superior Court Judge Ingrid Rivera de Martinez, in dismissing the indictments, stated for the record as follows (our translation):

THE COURT: In this case it has not been proven any of the essential elements of any of the offenses. There does not exist any evidence here. It is not that there is no evidence that shows that a crime has been committed beyond a reasonable doubt. There is *no* evidence of *any* crime.
(Underlining ours).

as to the § 1983 claim on the other grounds. It ruled:

We find that defendants' conduct as alleged in the complaint coupled with defendants' previous attempt to violate plaintiff's First Amendment rights amounts to a *prima facie* case of conduct so egregious as to "substantively, 'shock the conscience.'" *Morales*, 906 F.2d at 784 (citing *Barnier v. Szentmiklosi*, 810 F.2d 594, 599 (6th Cir.1987)). To cause the arrest of an innocent person and her prosecution when there is no ground for believing she committed a crime is outrageous and under the circumstances as alleged in the complaint, it is actionable under Section 1983. *See Goodwin v. Metts*, 885 F.2d 157, 163 (4th Cir.1989) ("Whether a criminal defendant is incarcerated is not decisive in determining if he has suffered an abridgment of constitutional rights"); *Hand v. Gary*, 838 F.2d 1420, 1424 (5th Cir.1988) ("There is a constitutional right to be free of 'bad faith prosecution'"). The complaint alleges that plaintiff suffered financial distress, the loss of her job and reputation and incalculable public humiliation as a result of defendants' actions. We emphasize that this case presents exceptional and unusual circumstances which justify, if barely so, the finding that plaintiff has stated a *prima facie* substantive due process claim. A reasonable juror may conclude at trial that plaintiff's constitutional rights have not been violated.

*Opinion and Order*, No. 89–1090 GG, at 12–13 (April 29, 1991) (footnote omitted).

## JURISDICTION

We first deal with the threshold question of whether we have jurisdiction of an interlocutory appeal raised by private defendants claiming the defense of qualified immunity.

The appellants contend that we have jurisdiction to entertain their interlocutory appeal premised upon Supreme Court precedent in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), and this circuit's ruling in *Lovell v. One Bancorp*, 878 F.2d 10 (1st Cir.1989). We find no support for appellants' contentions.

The *Mitchell* Court held that "a district court's denial of a claim of qualified immunity, [for a *government* official] to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." 472 U.S. at 530, 105 S.Ct. at 2817. The Court's ruling was rooted in the public policies served by preventing: 1) the distraction of officials from their *governmental duties;* 2) the inhibition of discretionary action of *governmental employees;* and 3) deterrence from *public service. Id.* at 526, 105 S.Ct. at 2829. The circumstances before us, which involve *private* actors, implicate neither the *Mitchell* holding itself nor the undergirding reasons for the *Mitchell* holding.

The appellants contend that under the functional approach test applied to immunities, this circuit's relevant caselaw permits their interlocutory appeal. This argument is disingenuous. We specifically stated in *Crippa v. Dukakis*, 905 F.2d 553 (1st Cir. 1990), that we had yet to consider whether the functional equivalents of government officials have a right to an interlocutory appeal. *Id.* at 556.

We examined the jurisdictional issue of interlocutory appeals in two cases. The first was in *Lovell*, 878 F.2d 10, where we held that a private party engaged in *private, commercial activity* had no right to an interlocutory appeal of the court's denial of his motion for summary judgment on qualified immunity grounds. *Id.* at 13. We limited our holding in *Lovell* with the qualification that, "[t]his case does not concern a private defendant whose allegedly wrongful conduct arises from acts that were required to be performed under a contract with a governmental body to perform a governmental function." *Id.* at 12 n. 4. The circumstances of the case before us do not implicate the *Lovell* qualification because the alleged conduct was not *required* conduct pursuant to a governmental *contract.* Rather, Felix de Santana alleges

that the appellants acted *unlawfully* in conspiracy with the Attorney General's Office to drive her out of her position at EDUCOOP for reasons of *self-interest.*

The second case in this circuit bearing on our jurisdiction over interlocutory appeals in qualified immunity cases is *Crippa,* 905 F.2d 553. We found that we lacked jurisdiction because we were unable to ascertain from the record a legal duty on the part of the defendant to perform any governmental function. *Id.* at 557. *Crippa* states:

> Where an appellant has no official (or equivalent) status, *Lovell,* 878 F.2d at 12, or where the record does not enable us to determine a cognizable basis for the assertion of appellate jurisdiction, as in the present case, we will not entertain an interlocutory appeal from the denial of an immunity claim on the basis of its label alone.

*Id.* at 556. As for cases where we would have jurisdiction, *Crippa* states: "Courts of appeals, including our own, determine their jurisdiction to entertain an interlocutory appeal from a denial of a claim of qualified immunity by focusing on the position and function of the party asserting the immunity claim." *Id.* at 555.

Our analysis of the holdings in *Lovell* and *Crippa* show that we confront in this case an issue of first impression. To ascertain whether the appellants have a right to an interlocutory appeal requires that we determine whether they would be entitled to raise the defense of qualified immunity. In so doing, we follow the logic behind the ruling in *Mitchell v. Forsyth.* The policies underlying the defense of qualified immunity are frustrated when a case is erroneously permitted to go to trial. It makes sense then that we need intervene only when we find that the court erred in its denial of summary judgment to defendants entitled to raise the defense. Otherwise, the public policy reasons behind granting an interlocutory appeal are not implicated.

## QUALIFIED IMMUNITY

Appellants contend that the district court erred in holding that they were not protected by qualified immunity from Felix de Santana's suit. They argue that the court's holding violates the law of this circuit. The court ruled:

> Defendants have failed to assert a single policy argument to justify the extension of qualified immunity to them. The complaint states that defendants initiated the conspiracy to gain control of EDUCOOP and to accomplish the removal of plaintiff from her position. Neither law nor any public authority required defendants to act as alleged in the complaint. *Rodriquez[s] v. Furtado, supra* [950 F.2d 805]. (1st Cir.1991) Nor were defendants relying upon some statute or regulation to justify their conduct.... Generally, qualified immunity is granted to certain classes of public officials to avoid the disruptive effect that potential damages under Section 1983 may have in the performance of their duties.... Extending immunity to defendants here makes no sense; they were not performing any public function or duty. Nor would the threat of liability affect any important public interest; the alleged conduct, prosecuting plaintiff on groundless criminal charges, was solely for an illegal private purpose.

*Opinion and Order,* at 17–18. We find that the district court correctly followed First Circuit precedent.[2]

---

**2.** Six circuits, in addition to ours, have ruled on the issue of whether the defense of qualified immunity applies to private defendants. The Fifth, Eighth, Tenth, and Eleventh Circuits have extended qualified immunity to private defendants who either aided public officials pursuant to statutes that were later held to be unconstitutional or acted lawfully pursuant to a governmental contract. *See Jones v. Preuit & Mauldin,* 851 F.2d 1321 (11th Cir.1988) (en banc), *vacated on other grounds,* 489 U.S. 1002, 109 S.Ct. 1105, 103 L.Ed.2d 170 (1989) (private defendants acting pursuant to state attachment laws entitled to qualified immunity); *DeVargas v. Mason & Hanger–Silas Mason Co.,* 844 F.2d 714 (10th Cir.1988) (extending qualified immunity to private corporation acting in accordance with duties imposed by contract with governmental body, performing governmental functions, and sued solely on the basis of those acts performed pursuant to contract); *Buller v. Buechler,* 706 F.2d 844 (8th Cir.1983) (private individual who relies upon unconstitutional state garnishment

In *Downs v. Sawtelle,* 574 F.2d 1 (1st Cir.1978), we held that a private defendant involved in a § 1983 conspiracy action was not protected by qualified immunity even though the state actors in the conspiracy were found to have qualified immunity. While subsequent Supreme Court cases have not overruled *Downs,* contrary to appellants' contention,[3] we did give qualified immunity to a private defendant in *Rodriques v. Furtado,* 950 F.2d 805 (1st Cir. 1991).

In *Rodriques,* we extended qualified immunity to a physician pressed into service by the state to conduct a vaginal cavity search. We extended qualified immunity to the private defendant/physician because we found that he acted at the command of the state rather than "out of self-interest" and because of the public policy reasons involved in such searches.

> Extending qualified immunity to physicians under the circumstances of this case not only benefits society by effectuating acceptable means to execute body cavity searches pursuant to a warrant issued on probable cause, it also benefits the party being searched by providing a safe means of conducting the search in a medically approved manner. Under the circumstances of this case, exposing private physicians to § 1983 liability without the shield of qualified immunity would be not only unfair, it could deter them from assisting in the execution of valid warrants. A reluctance on the part of physicians to perform body cavity searches could well signal a loss to society of a valuable crime detection procedure or result in these procedures having to be carried out by nonprofessionals, a

situation which would be even more intrusive of the subject's privacy.

*Id.,* at 815. The reasons for extending qualified immunity to the private defendant in *Rodriques* are not implicated by the circumstances of the case before us.

The appellants are alleged to have voluntarily engaged in illegal activities in the advancement of their own self-interests. The public policy reasons behind our extension of qualified immunity in *Rodriques* do not exist here. We hesitate to extend qualified immunity carte blanche to private defendants in malicious prosecution cases because of the potential abuses and consequences inherent in criminal prosecutions.

Private persons usually are not subject to the same public scrutiny as public officials, which may serve to curtail improper behavior. Individuals wrongfully accused of committing a crime face not only the deprivation of their liberty, but also damage to their reputations as well as loss of property interests. Based on the facts of this case, we see no reason to extend the right to claim qualified immunity to these defendants.

Because we hold that we lack jurisdiction to hear the appellants' interlocutory appeal, we do not review the issue of whether § 1983 malicious prosecution law applies to them.

Appeal dismissed for lack of jurisdiction.

procedure may assert qualified immunity defense); *Folsom Inv. Co. v. Moore,* 681 F.2d 1032 (5th Cir.1982) (private person who relies on a valid state attachment statute later found unconstitutional is entitled to immunity from damages under § 1983).

The Sixth and Ninth Circuits have not extended qualified immunity to private defendants. *See Duncan v. Peck,* 844 F.2d 1261 (6th Cir.1988) (private party in attachment action not entitled to qualified immunity defense); *Howerton v. Gabica,* 708 F.2d 380, 385 n. 10 (9th Cir.1983) ("there is no good faith immunity under section

1983 for private parties who act under color of state law to deprive an individual of his or her constitutional rights").

**3.** Appellants incorrectly state that the Supreme Court in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), overruled *Downs.* The majority specifically stated that they were not "reach[ing] the question of the availability of [a qualified immunity] defense to private defendants at this juncture." *Id.* at 942 n. 23, 102 S.Ct. at 2756 n. 23.