Paul E. SHERMAN, Plaintiff–Appellant,

v.

FOUR COUNTY COUNSELING CENTER, Douglas Cox, Cass Superior Court Judge, and Gary Boyles, Officer, Defendants–Appellees.

No. 92–1671.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 5, 1993.

Decided Feb. 19, 1993.

Robert L. Justice, Logansport, IN (argued), for Paul E. Sherman.

Edward N. Kalamaros, South Bend, IN, Michael L. Carter (argued), Lacava, Zeigler & Carter, Indianapolis, IN, for Four County Counseling Center.

Linley E. Pearson, Atty. Gen., David M. Wallman, Dist. Atty. Gen. (argued), Federal Litigation, Indianapolis, IN, for Douglas Cox and Gary Boyles.

Before BAUER, Chief Judge, MANION, Circuit Judge, and EVANS, Chief District Judge.[1]

BAUER, Chief Judge.

In this appeal, we consider the scope of qualified immunity for a police officer and a private mental institution involved in the emergency involuntary detention and treatment of a person who was allegedly mentally ill and dangerous at the time of the defendants' actions. The district court found that the police officer and the mental hospital are protected by qualified immunity in this case. We affirm.

---

**1.** The Honorable Terence T. Evans, Chief Judge of the United States District Court for the Eastern District of Wisconsin, is sitting by designation.

## I. Facts

Paul Sherman was arrested on March 22, 1989 for criminal harassment. He posted bond and was released. On the following day, Indiana State Police Officer Gary Boyles filed an application for emergency detention with the Cass County Superior Court together with a Physician's Emergency Statement. The application asserted Officer Boyles' belief that Sherman was suffering from a psychiatric disorder and was dangerous to himself and others. The accompanying physician's statement asserted that based upon the information in Boyles' application, the physician believed Sherman "may be mentally ill and dangerous." Physician's Emergency Statement, Appellant's Supplemental Appendix ("Supp. App.") at 15.

Based upon the application and the statement, Judge Douglas A. Cox of the Cass Superior Court executed an endorsement authorizing any police officer to take Sherman to the Four County Counseling Center ("Four County") "to be detained, examined and given such emergency treatment as necessary...." Endorsement by Judicial Officer Authorized to Issue Warrants for Arrest, Supp.App. at 15. Accordingly, Boyles took Sherman to Four County on the afternoon of March 23 for treatment and evaluation.

On March 29, 1989, Four County filed with the court a Report Following Emergency Detention. In this report, Four County stated that it had probable cause to believe Sherman was suffering from chronic paranoid schizophrenia and that he needed to be detained for treatment. In the accompanying Physician's Statement, Dr. Umamaheswara Kalapatapu stated that in his opinion, Sherman was dangerous and needed treatment in an appropriate facility. Supp.App. at 16–20.

Based on this report, Judge Cox ordered that Sherman's pre-hearing detention continue, and set a preliminary hearing date. Order of March 29, 1989, Supp.App. at 21. In an addendum to the March 29 order, Judge Cox also ordered Four County to continue to treat Sherman "as necessary and appropriate, with or without the consent of the respondent." Addendum, Supp. App. at 22. On March 30, 1989, Judge Cox authorized Four County to transfer Sherman to Logansport State Hospital. Later that day Sherman was transferred to Logansport. Sherman remained there until his preliminary hearing on April 11, 1989, when Judge Cox determined that continuing Sherman's involuntary commitment was not warranted. During his detention at both hospitals, Sherman was given antipsychotic medication. He alleges that he was compelled to take this medication against his will.

Sherman sued Officer Boyles, Judge Cox, Cass County, Four County, and Michael Boonstra, the Public Defender who represented him at the preliminary hearing, under 42 U.S.C. § 1983. Sherman alleged that the actions of the defendants deprived him of his liberty without due process of law. The district court dismissed Sherman's claims against Officer Boyles, Judge Cox, Cass County, and Public Defender Boonstra based upon the doctrines of absolute and qualified immunity. Memorandum and Order of March 6, 1991, Supp. App. at 23, 30. The court denied Four County's motion to dismiss, but granted its motions for summary judgment, finding that the hospital was entitled to absolute immunity with respect to its acceptance, detention, and treatment of Sherman pursuant to Judge Cox's emergency detention order, and qualified immunity for its detention and treatment of Sherman after Judge Cox's second order continuing Sherman's detention, and before his transfer to Logansport State Hospital. Memorandum and Order of July 22, 1991, at 6; Memorandum and Order of February 18, 1992.

Sherman only pursues appeals of the district court's rulings regarding Officer Boyles and Four County. We consider the immunity of each defendant in turn.

## II. Analysis

### A. Standard of Review

We review the district court's grant of a motion to dismiss *de novo. Dimmig v. Wahl,* 983 F.2d 86, 87 (7th Cir. Jan. 6, 1993). We accept all well pleaded facts alleged in the complaint as true and make all reasonable inferences in favor of the

plaintiff. *Id.* We apply a similar standard to the district court's grant of summary judgment. We review the decision *de novo,* and will uphold the judgment if the record and all the inferences drawn from it in the light most favorable to the party opposing it establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *First Wisconsin Trust Co. v. Schroud,* 916 F.2d 394, 398 (7th Cir. 1990); *La Preferida, Inc. v. Cerveceria Modelo, S.A.,* 914 F.2d 900, 905 (7th Cir. 1990).

### B. Indiana's Statutory Scheme

■ Indiana law provides a detailed process for the involuntary commitment of mentally ill persons who may be dangerous to themselves or others. Ind.Code §§ 16–14–9.1–3, –.1.7, –.1–6.5, –.1–7 (1988). The law provides that a person may be held in emergency detention for seventy-two hours (excluding weekends and holidays) in a psychiatric hospital upon the application of a health or police officer. Ind.Code §§ 16–14–9.1–7(a). The application must contain a statement by the applicant that the person is mentally ill and dangerous and in need of immediate restraint. It must also contain a physician's written statement that, based upon information the doctor has received, the person may be mentally ill or dangerous. *Id.* Officer Boyles' application satisfied these requirements.

The statute also provides that, based upon the application, a judge authorized to issue arrest warrants in the county where the person is present may authorize a police officer to take the person into custody and transport him to a hospital for detention. *Id.* Judge Cox's authorization satisfied these requirements. The statute does not allow a person to be held in emergency detention for more than seventy-two hours (excluding weekends and holidays) unless the superintendent of the institution in which the person is detained recommends to the court within the seventy-two hour period that continued involuntary detention is necessary. Ind.Code § 16–14–9.1–7. The statute also sets out various criteria for the report. § 16–14–9.1–7(b), (c). Four

County's report was timely and satisfied the statutory requirements; it recommended involuntary commitment.

The court must act upon the hospital's report and petition for involuntary commitment within 24 hours of its receipt, and determine whether there is probable cause to believe the person is mentally ill and dangerous. *Id.* at (e). Judge Cox considered the report the same day it was filed (March 29, 1989) and ordered Four County to continue Sherman's detention and set a preliminary hearing date. The statute requires the court to set the preliminary hearing date within two days of its order for continued detention (excluding holidays and weekends). *Id.* Judge Cox did not set the preliminary hearing within the statutory limitations period—the preliminary hearing was scheduled for April 10, 1989, but was held on April 11. Following the hearing, Judge Cox found that continuing Sherman's involuntary commitment was not required and ordered his release.

### C. Officer Boyles

Sherman alleges that Officer Boyles is liable under 42 U.S.C. § 1983 because Boyles arrested Sherman in violation of the Fourth Amendment. He further contends that Boyles is not entitled to qualified immunity because the Fourth Amendment principles Boyles violated were clearly established at the time Boyles acted. Boyles is liable, Sherman asserts, because:

(1) he obtained an arrest warrant without submitting any evidence of probable cause supported by oath, in direct and literal violation of the Fourth Amendment; (2) he obtained an arrest warrant without alleging any facts which could conceivably show probable cause[;] and (3) he arrested Mr. Sherman without any additional evidence of probable cause.

Appellant's Brief at 30. Sherman maintains that the law governing arrest warrants applies to his emergency detention because he was detained against his will. Because Boyles' application does not meet the requirements for arrest warrants (i.e., it was not supported by sworn statements from Boyles and the physician, and does

not contain information establishing probable cause), Boyles should have known the detention violated Sherman's Fourth Amendment rights.

That Boyles complied to the letter with Indiana's statute governing emergency civil commitments is no defense, Sherman argues, because "the statutes are in direct literal conflict with the Fourth Amendment's well established requirement of a warrant based on probable cause supported by oath as a prerequisite to seizure of the person." Appellant's Brief at 42. Consequently, he argues, Boyles is not entitled to qualified immunity.

■ "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In this Circuit, we have developed a two-step analysis in qualified immunity cases. We first determine whether the alleged conduct violated the plaintiff's constitutional rights, and then, if rights were violated, whether they were clearly established at the time the violation occurred. *Fiorenzo v. Nolan,* 965 F.2d 348, 351-52 (7th Cir.1992); *Auriemma v. Rice,* 910 F.2d 1449, 1453 (7th Cir.1990) (en banc), *cert. denied,* — U.S. —, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991).

■ Whether a constitutional right is clearly established is a question of law we review *de novo. Apostol v. Landau,* 957 F.2d 339, 342 (7th Cir.1992); *Rakovich v. Wade,* 850 F.2d 1180, 1204 (7th Cir.) (en banc), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). We have explained that the right must be sufficiently particularized to put potential defendants on notice that their conduct is probably unlawful. *Henderson v. DeRobertis,* 940 F.2d 1055, 1059 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992). Until a particular con-

stitutional right has been stated so that reasonably competent officers would agree on its application to a given set of facts, it has not been clearly established. *Id.; Auriemma,* 910 F.2d at 1453.

■ The question before us, then, is whether a reasonable officer would have believed Sherman's detention was lawful in light of clearly established law and the information Boyles possessed. *Hunter v. Bryant,* — U.S. —, —, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991). Boyles obeyed facially valid statutes, and we have found no case challenging the constitutionality of the emergency commitment procedures they contain. *See G.P.H. v. Giles,* 578 N.E.2d 729, 731 (Ind.App.5th Dist.1991) (reviewing procedures at length in context of plaintiff's appeal of commitment order). In *G.P.H.,* the Indiana court gave no hint that the validity of Indiana's emergency commitment procedures is in doubt. Nor can we find any cases questioning the constitutionality of the statutes. Moreover, Sherman does not allege that Boyles misrepresented the information in his application or acted with improper motives. Rather, he contends that Boyles should have known that the statutory application requirements were not sufficient to satisfy the Fourth Amendment.

We disagree. Although the Fourth Amendment applies when a state seizes and detains a person involuntarily in a mental institution, *McKinney v. George,* 726 F.2d 1183, 1186 (7th Cir.1984), on these facts we cannot find that a reasonable officer in Boyles position would have known he was violating Sherman's rights, or even that Sherman's rights were violated at all. Indeed, based upon our review of the uncontested facts, we conclude that a reasonable officer would have believed he had probable cause to seek emergency mental health detention for Sherman.[2] Boyles knew Sherman had been charged and released on bond for harassing a member of his church. Boyles also learned that Sherman threatened the victim of the harass-

---

**2.** We find no merit in Sherman's contention that Boyles should have known he was violating Sherman's rights because neither Boyles' statements in the application nor the physician's statements were sworn. The statute does not require sworn statements in emergency detention proceedings, and there is no allegation that either man lied in the application papers.

ment after his initial court appearance, and visited the church after he was released on bond. Late on the night before Boyles seized him, Sherman drove around and around the church parking lot. On the following morning, Sherman was crying publicly in a restaurant about the harassment charges and the situation with his church.[3] Boyles related this information to a physician who concurred with Boyles' concern that Sherman might be dangerous. Boyles then presented the application and the physician's statement to Judge Cox, who authorized Sherman's detention.

■ We believe these facts establish that Boyles is entitled to qualified immunity. Even if we assumed that Boyles (and Judge Cox) erred in concluding that probable cause existed to detain Sherman for psychiatric evaluation, Boyles is entitled to qualified immunity because his decision was reasonable even if mistaken. Cf. Hunter v. Bryant, — U.S. —, —, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (discussing qualified immunity of secret service agents who arrested individual they believed threatened President); Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (warrantless search). Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986), and will accommodate reasonable errors "because officials should not err always on the side of caution because they fear being sued." Hunter, — U.S. at —, 112 S.Ct. at 537 (citations omitted). Boyles complied with all of Indiana's facially valid statutory requirements, and we do not believe his conclusion that Sherman might be dangerous was unreasonable in light of Sherman's multiple threats against others. Police officers should not be forced by fear of suit to wait for a mentally unstable person to carry out threats before intervening. See Melinda Beck, Murderous Obsession,

Newsweek, July 13, 1992 at 60 (detailing recent nationwide pattern of murders following bizarre campaigns of threats and harassment). We agree with the district court's conclusion that Boyles is entitled to qualified immunity.

### D. Four County Counseling Center

Sherman contends that Four County violated his due process rights by administering anti-psychotic medication to him against his will. Four County claims, and the district court agreed, that its actions are shielded by qualified immunity. Sherman disputes Four County's immunity claim; he contends that under Wyatt v. Cole, — U.S. —, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992), private parties are not entitled to qualified immunity in any circumstances. In analyzing Four County's immunity from Sherman's § 1983 action, the district court determined that the scope of any immunity depends upon the function the defendant was performing at the time of the actions at issue. It found that Four County performed four functions:

- It accepted Sherman pursuant to Judge Cox's emergency detention order of 3/23/89.
- It filed a petition for involuntary commitment under Indiana Code § 16–14–9.1–7(b) seeking Sherman's further civil confinement.
- It detained Sherman for one day after Judge Cox ordered Sherman's continued confinement on 3/29/89, and set a hearing date for the involuntary commitment proceeding outside the time permitted by Indiana law.
- It administered medications to Sherman against his will under the Addendum to Judge Cox' continued detention order. The Addendum ordered Four County to "give whatever treatment is deemed necessary and appropriate with or without the consent of the Re-

---

**3.** Four County's records of Sherman's hospitalization indicate that Sherman argued with his minister about the version of the Bible the church was to use. Sherman told hospital staff that he held a gun to the elders of the church, and explained to one psychologist that although he grabbed his minister from behind and held

him in a "bear hug" (on another occasion), he did not intend to hurt or threaten the minister. See Progress Note and Defendant's Exhibit A to Reply Memorandum in Support of Motion for Summary Judgment, at 36, 49–51, Pleadings Volume 2, Document #91.

spondent." Addendum, Supp.App. at 22.

On appeal, Sherman challenges only the district court's determination that Four County is immune from suit for administering anti-psychotic medication against his will. He also argues that even if Four County is entitled to qualified immunity, it violated his clearly established right to refuse anti-psychotic medication. Consequently, he claims qualified immunity does not shield Four County from his § 1983 action. We consider each claim in turn.

### 1. Qualified Immunity for Private Party [4]

■ This Circuit has not considered whether qualified immunity applies to private defendants. Prior to the Supreme Court's recent decision in *Wyatt*, seven other circuits considered the issue. Five of them (the First, Fifth, Eighth, Tenth, and Eleventh) extended qualified immunity to private defendants "who either aided public officials pursuant to statutes that were later held to be unconstitutional, or acted lawfully pursuant to a government contract." *Felix de Santana v. Velez*, 956 F.2d 16, 19 n. 2 (1st Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 59, 121 L.Ed.2d 28 (1992). *See Frazier v. Bailey*, 957 F.2d 920, 928–29 (1st Cir.1992) (private persons employed by private corporation acting under contract performing statutorily imposed duties); *Rodriques v. Furtado*, 950 F.2d 805, 814 (1st Cir.1991) (private physician who performed body cavity search pursuant to search warrant); *Jones v. Preuit & Mauldin*, 851 F.2d 1321 (11th Cir.1988) (en banc) (private defendants acting pursuant to state attachment laws), *vacated on other grounds*, 489 U.S. 1002, 109 S.Ct. 1105, 103 L.Ed.2d 170 (1989); *De-Vargas v. Mason & Hanger–Silas Co.*, 844 F.2d 714 (10th Cir.1988) (private corporation fulfilling duties imposed by govern-

ment contract and performing governmental functions); *Buller v. Buechler*, 706 F.2d 844 (8th Cir.1983) (private individual relied on unconstitutional garnishment statute); and *Folsom Investment Co. v. Moore*, 681 F.2d 1032 (5th Cir.1982) (private person relied upon unconstitutional garnishment statute).

The Sixth and Ninth Circuits declined to extend qualified immunity to private parties pursuing private ends under state statutes. *Duncan v. Peck*, 844 F.2d 1261 (6th Cir.1988) (attachment action); *Howerton v. Gabica*, 708 F.2d 380, 385 n. 10 (9th Cir. 1983) (landlord not entitled to qualified immunity for unlawful eviction proceedings). The First Circuit, distinguishing its holdings in *Frazier* and *Rodriques*, also held that private parties engaged in illegal action to advance their self-interests are not protected by qualified immunity. *Felix de Santana*, 956 F.2d at 20 (conspiracy with district attorney to bring baseless criminal charges).

In *Wyatt*, the Supreme Court examined the question it left open in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), i.e., "whether private defendants charged with 42 U.S.C. § 1983 violations are entitled to qualified immunity from suit." *Wyatt,* —— U.S. at ——, 112 S.Ct. at 1829. It held that they are not. Wyatt and Cole were former partners. After their falling out, Cole obtained a writ of replevin and at his direction, the sheriff seized a significant amount of Wyatt's property. The state court dismissed Cole's complaint in replevin, and ordered him to return Wyatt's property. Cole refused, and Wyatt sued him (as well as the police officers involved in the seizure) in federal court, challenging the constitutionality of the replevin statute and seeking damages. *Id.* at ——, 112 S.Ct. at 1829. The district court found that the statute violated the Due Process

---

**4.** In his reply brief, Sherman asserts that even if private individuals are entitled to qualified immunity, private corporations should not be because public corporations, i.e. municipalities, are not. Four County moved to strike this argument because it contends the argument was not raised in Sherman's opening brief. Sherman

counters that the argument was raised in the opening brief. Notwithstanding this dispute, we find no persuasive reason to distinguish between a private corporation and a private individual in our analysis of Four County's qualified immunity.

Clause, but dismissed the case because it held that Cole as well as the police officers were entitled to qualified immunity because they acted in reliance upon existing state law.

The Supreme Court's analysis began with *Lugar,* the case involving a state attachment statute, in which it considered but did not decide the issue. It noted existing opinions that rejected qualified immunity for private parties acting under state law in similar circumstances. *See, e.g., Downs v. Sawtelle,* 574 F.2d 1, 15–16 (1st Cir.) (spendthrift guardian who had ward sterilized against her will not entitled to qualified immunity), *cert. denied sub nom., Hogan v. Downs,* 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978); *Howerton,* 708 F.2d at 385 n. 10 (9th Cir.1983); *Duncan,* 844 F.2d at 1261. The bulk of the *Wyatt* court's discussion focussed on *Folsom Investment Co. v. Moore,* 681 F.2d 1032 (5th Cir.1982), the case the Court of Appeals relied upon to extend qualified immunity to Cole. The Supreme Court did not cite or discuss any of the cases involving private defendants performing quasi-governmental functions or roles.

In *Folsom,* the Fifth Circuit held that "a 1983 defendant who has invoked an attachment statute is entitled to immunity from monetary liability so long as he neither knew nor reasonably should have known that the statute was unconstitutional." *Id.* at 1037 (quoted in *Wyatt,* —— U.S. at —— – ——, 112 S.Ct. at 1830–31.). The Fifth Circuit relied upon two rationales to justify its holding: (1) congressional intent to shield from liability persons who resort to legal process in good faith is evidenced by the common law probable cause defense to the torts of malicious prosecution and wrongful attachment, and (2) the important public interest in permitting citizens to rely upon presumptively valid state laws, and to resort to legal processes which may later be held unconstitutional, without fear of liability when the citizen's role in the unconstitutional action is minimal. *Id.*

The Supreme Court was not persuaded. The Court explained the common law tradition that influences the application of quali-

fied immunity in 1983 actions: Certain government officials are accorded "either absolute or qualified immunity from suit if the tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish the doctrine." *Wyatt,* at ——, 112 S.Ct. at 1831 (citations omitted). But, "irrespective of the common law support, we will not recognize an immunity available at common law if § 1983's history or purpose counsel against applying it in § 1983 actions." *Id.*

The Court then examined the status of immunity for private persons instituting attachment actions at common law. It found that such persons were not shielded from malicious prosecution or abuse of process actions. The Court also explained that the policy reasons announced in *Harlow* for keeping insubstantial claims against public officials from going to trial did not apply in the attachment context. *Id.* at ——, 112 S.Ct. at 1833. Qualified immunity was extended to government officials "where it was necessary to preserve their ability to serve the public good or to ensure that talented candidates were not deterred by the threat of damage suits from entering public service." *Id.*

These rationales do not apply to "private citizens who rely unsuspectingly on state laws," because

unlike school board members, or police officers, or Presidential aides, private parties hold no office requiring them to exercise discretion, nor are they principally concerned with enhancing the public good.... Moreover, unlike with government officials performing discretionary functions, the public interest will not be unduly impaired if private individuals are required to proceed to trial to resolve their legal disputes. In short, the nexus between private parties and the historic purpose of qualified immunity is simply too attenuated to justify such an extension of our doctrine of qualified immunity.

*Id.* at ——, 112 S.Ct. at 1833–34 (citations omitted).

The Court limited its holding, however, to the "precise issue" decided by the lower courts, whether qualified immunity is available for private defendants faced with § 1983 liability for invoking a state replevin, garnishment, or attachment statute. *Id.* It left other immunity issues, including, we believe, the one presented in the instant case, for another day. —— U.S. at ——, 112 S.Ct. at 1834.

We have found only one case decided by a Court of Appeals since *Wyatt* was decided. *Burrell v. Board of Trustees of Georgia Military College,* 970 F.2d 785 (11th Cir.1992). In *Burrell,* the plaintiff alleged that public officials and private persons conspired to have her fired from her job in retaliation for her public criticisms of the Georgia Military College. *Id.* at 787. The Eleventh Circuit acknowledged the Supreme Court's holding in *Wyatt,* but refused to "diagnose the current vitality of court of appeals decisions allowing private defendants to assert qualified immunity in non-attachment cases ... since they would clearly be distinguishable from the present case even if they survived *Wyatt.*" *Id.* at 795. Burrell relied upon *DeVargas, Frazier,* and *Rodriques,* cases we summarized briefly above, which involved, respectively, a private party acting under a government contract fulfilling a governmental function; parties fulfilling statutorily mandated duties under a contract; and a physician acting pursuant to court order. *See Burrell,* 970 F.2d at 795. The Eleventh Circuit compared these cases, which extended qualified immunity, to *Howerton, Felix de Santana,* and *Downs v. Sawtelle,* cases in which private parties invoked state law in pursuit of private ends. *See* discussion *supra* at 403–04. The *Burrell* court found this second group of cases, where qualified immunity was denied, more analogous to Burrell's case. The defendants were not acting under a government contract, "nor were they under court order to assume the responsibilities of a public official in the public interest." *Id.* at 796 (citations omitted). Instead, the defendants allegedly conspired with public officials to deprive the plaintiff of her constitutional rights, facts the court found analogous to the situations in *Downs* and *Felix de Santana.*

The *Burrell* court stressed that qualified immunity is extended to give public officials the peace of mind to exercise discretion in decision making. The public interest is not served by allowing the qualified immunity defense "to encourage private individuals to redress their differences with another person by conspiring with public officials to deprive that person of his or her constitutional rights." *Id.* at 796. We find this reasoning persuasive, but we believe the case before us falls within the first category of cases considered by the Eleventh Circuit. We also believe that *Wyatt* does not bar, and public policy requires qualified immunity be extended to Four County.

Four County accepted and treated Sherman pursuant to court order and in accordance with the procedures set forth by Indiana law. The state court directed Four County to give Sherman "whatever treatment is deemed necessary and appropriate with or without the consent of the Respondent." Addendum, Supp.App. at 22. Sherman does not allege that Four County acted in bad faith or with improper motives, or that the administration of the medication was medically inappropriate. Nor does he allege that Four County acted to further its own pecuniary or other interests. Four County was ordered by the state court to detain Sherman against his will and to treat him as it deemed appropriate. It seems clear that a state hospital that acted precisely as Four County did would be protected by qualified immunity (if not the Eleventh Amendment). Indeed, Sherman sued Logansport State Hospital, but voluntarily dismissed his claims. Sherman's Motion to Dismiss, Record Document 31, Pleadings Volume 1. We believe qualified immunity should shield Four County's exercise of discretion in its discharge of these government imposed duties.

The policy justifications which underlie the doctrine of qualified immunity for government officials apply with full force to Four County's activities here. Although it is a private hospital, Four County accepted

and cared for a state mental patient committed on an emergency basis. Its role is analogous to the school board members the Supreme Court expressed concern about in *Wyatt*. —— U.S. at —— – ——, 112 S.Ct. at 1833–34. Four County was fulfilling a public duty. If the actions it took pursuant to court order subject it to suit, private hospitals might well refuse to accept involuntary patients. This refusal would increase the load on the strained resources of the state's public hospitals. The *Wyatt* Court noted that one purpose of qualified immunity is to avoid discouraging public service. *Wyatt*, at ——, 112 S.Ct. at 1833. Denying qualified immunity to private hospitals in this situation would do just that. Moreover, in some instances, admission at smaller local private hospitals benefits the involuntary patient by minimizing the disruption of the patient's life. It allows the patient to be evaluated close to home and family. We believe the public interest in maximizing the number of facilities available for the detention and treatment of the mentally ill is best served by not exposing private facilities to liability for discretionary medical judgments made under court order. *Cf. Rodriques v. Furtado*, 950 F.2d 805 (1st Cir.1991) (private physician who performed vaginal cavity search pursuant to search warrant entitled to qualified immunity).

Like the First Circuit, we distinguish this case from those in which private parties "voluntarily engaged in illegal activities in the advancement of their own self-interest." *Felix de Santana*, 956 F.2d at 20. We refuse to give private hospitals the Hobson's choice of obeying a court's order directing discretionary medical treatment, and facing liability for the resulting medical judgment, or refusing to make a medical judgment, and exposing hospital staff and patients to the risk of harm posed by a potentially violent mental patient.

For these reasons, we hold that Four County may raise a qualified immunity defense for administering anti-psychotic medication to Sherman.

### 2. Does the Qualified Immunity Defense Shield Four County?

The next question, then, is whether qualified immunity shields Four County's treatment of Sherman. As we discussed above, we have developed a two-step analysis of assertions of qualified immunity. In order to determine whether its qualified immunity shields Four County for its treatment of Sherman, we must first determine whether its alleged conduct violated Sherman's constitutional rights, and then, if rights were violated, whether they were clearly established at the time the violation occurred. *Fiorenzo v. Nolan*, 965 F.2d 348, 351–52 (7th Cir.1992); *Auriemma v. Rice*, 910 F.2d 1449, 1453 (7th Cir.1990) (en banc).

We have explained that the "right at issue must not be phrased too generally— qualified immunity would be a tenuous shield if a plaintiff could simply say that she has a general, yet clearly established, right to 'due process.' " *McGee v. Bauer*, 956 F.2d 730, 733 (7th Cir.1992). Sherman asserts that he has a Fourteenth Amendment Due Process right to be free from forced medication "without due process of law." This formulation is too general. Sherman asserts the right of a person committed involuntarily to a mental hospital on an emergency basis to refuse to take anti-psychotic medication.

### a. Sherman's argument

■ Sherman argues that an Indiana Supreme Court decision establishes that his federal constitutional rights were violated by Four County's actions. *See In re Mental Commitment of M.P.*, 510 N.E.2d 645 (Ind.1987). In *M.P.*, the court held that Indiana mental health patients are entitled to a judicial hearing before an institution may force them to take anti-psychotic medication. *Id.* Sherman bases his argument on the false belief that the Indiana Supreme Court was interpreting the federal Constitution because it relied upon a United States Supreme Court case, *Mills v. Rogers*, 457 U.S. 291, 293, 102 S.Ct. 2442, 2445, 73 L.Ed.2d 16 (1982).

He attempts to bolster this argument with a discussion of the Fourth Amend-

ment's restrictions on physical intrusions. Because coerced medication is a serious physical intrusion, he maintains, a mental institution should know it must have probable cause to warrant the intrusion. He asserts that at the time Four County treated him, "probable cause" (of what we are not entirely sure) was not sufficient: "After the *M.P.* decision in 1987 the requisite due process changed from the search warrant procedure to the hearing required by Indiana Code (1988) 16–14–1.6–7 as outlined in *M.P.*" Appellant's Brief at 27.

We disagree with Sherman's interpretation of *M.P.* and his Fourth Amendment analysis. The Indiana Supreme Court's analysis derives almost totally from the provisions of the Indiana Code governing the commitment and treatment of mentally ill persons. 510 N.E.2d at 646–47. The court held that

> to override a patient's *statutory* right to refuse treatment, the State must demonstrate by clear and convincing evidence that: 1) a current and individual medical assessment of the patient's condition has been made; 2) that it resulted in the honest belief of the psychiatrist that the medications will be of substantial benefit in treating the condition suffered, and not just in controlling the behavior of the individual; and 3) and that the probable benefits from the proposed treatment outweigh the risk of harm to, and personal concerns of, the patient.

*M.P.*, 510 N.E.2d at 647 (emphasis added). The court also explained that the statute requires a judicial hearing, not an administrative one. It is clear from the face of this statement that the Indiana Supreme Court was referring to the statutory rights of involuntarily committed patients in Indiana. Sherman's claim is further weakened because the court focussed on the rights of an involuntarily committed patient, not one detained temporarily on an emergency basis as Sherman was. Regardless of this distinction, we do not believe that *M.P.* set forth the requirements of the federal Constitution, but the dictates of Indiana law. "State law may recognize liberty interests more extensive than those independently protected by the Federal Constitution." *Mills v. Rogers,* 457 U.S. 291, 300, 102 S.Ct. 2442, 2449, 73 L.Ed.2d 16 (1982). But state law recognition does not establish the scope of federal rights. *Id.* We must look beyond the ruling in *M.P.* for the scope of Sherman's rights in 1989.

The United States Supreme Court has explicitly rejected claims that institutionalized persons are entitled to adversarial hearings before judicial officers. *Washington v. Harper,* 494 U.S. 210, 228, 110 S.Ct. 1028, 1040, 108 L.Ed.2d 178 (1990) (anti-psychotic medication in prison setting); *Youngberg v. Romeo,* 457 U.S. 307, 321–22, 102 S.Ct. 2452, 2461, 73 L.Ed.2d 28 (1982) (restraints in civil setting); *Parham v. J.R.,* 442 U.S. 584, 607, 99 S.Ct. 2493, 2506–07, 61 L.Ed.2d 101 (1979) ("Due process has never been thought to require that the neutral and detached trier of fact be law trained or a judicial or administrative officer. Surely this is the case as to medical decisions, for neither judges nor administrative hearing officers are better qualified than psychiatrists to render psychiatric judgments.").

■ The question remains, then, whether Sherman's constitutional rights were violated by Four County's actions, and if so, whether the rights were clearly established at the time. Whether a constitutional right is clearly established is a question of law we review *de novo. Apostol v. Landau,* 957 F.2d 339, 342 (7th Cir.1992); *Rakovich v. Wade,* 850 F.2d 1180, 1204 (7th Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). We have explained that the right must be sufficiently particularized to put potential defendants on notice that their conduct is probably unlawful. *Henderson v. DeRobertis,* 940 F.2d 1055, 1059 (7th Cir.1991). Until a particular constitutional right has been stated so that reasonably competent officers would agree on its application to a given set of facts, it has not been clearly established. *Id.; Auriemma,* 910 F.2d at 1453.

Although we do not believe Sherman's rights were violated, our analysis in this case is simplified by Sherman's concession

in his brief; "Although the precise contours of what process is due prior to deprivation of the right to be free from forced anti-psychotic medication may have been vague in March of 1989, it is beyond argument that some process was due." Appellant's Brief at 28. The plaintiff bears the burden of convincing the court that a clearly established constitutional right existed at the time of the actions in question. *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.) (en banc), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). We do not believe Sherman has met this burden; in fact, he appears to concede that the contours of due process were not clearly established in this context in 1989. We agree with the district court that the requirements of due process in this context are not "clearly established" even today. *See* Memorandum & Order of February 18, 1992 ("2/18/92 Order") at 22, Supp.App. at 94.

b. The substantive right

■ The Supreme Court's decision in *Youngberg* sheds some light on the legal landscape at the time Four County acted. In *Youngberg,* a mentally disabled patient challenged his conditions of confinement at a state hospital, and the hospital's use of restraints. 457 U.S. at 310–11, 102 S.Ct. at 2455. The Court explained:

The question then is not simply whether a liberty interest has been infringed but whether the extent or nature of the restraint ... is such as to violate due process. In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance 'the liberty of the individual' and 'the demands of an organized society.' *Poe v. Ullman,* 367 U.S. 497, 542 [81 S.Ct. 1752, 1776, 6 L.Ed.2d 989] (1961) (Harlan, J., dissenting). In seeking this balance in other cases, the Court has weighed the individual's interest in liberty against the State's asserted reasons for restraining individual liberty.

457 U.S. at 320, 102 S.Ct. at 2460.

The state's asserted reasons are contained in the treating physician's opinion and recommendations. The Court held that medical decisions concerning patient care and treatment are analyzed differently from typical government actions. "[T]he Constitution only requires that the courts make certain that professional judgment in fact was exercised.... [T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 321–323, 102 S.Ct. at 2461–62.

Courts have wrestled with the scope of a civilly committed patient's right to refuse medication. In 1983, the Third Circuit sitting en banc after a remand from the Court, issued six opinions expressing the views of the various judges on the appropriate process for administering medication involuntarily to civilly committed mental patients. *Rennie v. Klein,* 720 F.2d 266 (3d Cir.1983) (en banc). *See also Walters v. Western State Hospital,* 864 F.2d 695, 697–98 (10th Cir.1988) (committed patient possesses absolute right to refuse medication); *Bee v. Greaves,* 910 F.2d 686 (10th Cir.1990) (pre-trial detainee); and *Rogers v. Okin,* 478 F.Supp. 1342, 1383 n. 58 (D.Mass.1979) (civil patients), *aff'd in part and rev'd in part,* 634 F.2d 650 (1st Cir. 1980). No clear rule appears from these cases.

The Supreme Court did not announce until 1990 that prison inmates possess a "significant liberty interest in avoiding the unwanted administration of anti-psychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper,* 494 U.S. 210, 221–22, 110 S.Ct. 1028, 1036, 108 L.Ed.2d 178 (1990). But the Court had not considered (and to date has not considered) the questions Four County faced in 1989.

The district court in this case found that "a diligent state actor [in 1989] would have faced conflicting case law on the subject." 2/18/92 Order at 22. We agree. In fact the Eighth Circuit's decision in *Cochran v.*

*Dysart,* 965 F.2d 649 (8th Cir.1992), confirms our belief that even today the scope of the Fourteenth Amendment is not clear in this area. In *Cochran,* the plaintiff challenged his continued confinement and forced administration of anti-psychotic medication under 18 U.S.C. § 4246. This statute allows for the continued detention of an individual beyond his prison sentence in some circumstances when he suffers from a mental disease or defect. The court treated Cochran like a prison inmate because he was an inmate being held after his sentence expired because of his mental status. The scope of his rights regarding treatment were dictated by the Court's ruling in *Washington v. Harper. See Cochran,* 965 F.2d at 649–50. Notwithstanding the Supreme Court's ruling on the rights of inmates to refuse treatment, the three-judge panel could not agree on whether the demands of due process had been satisfied. The majority opinion stated that the reasons for medication in the treating physician's report could not justify forced medication under *Harper.* One judge concurred "solely on the ground that the record does not contain the documents referred to in [the doctor's] report," and the third judge dissented because he believed the due process standards of *Harper* were satisfied. 965 F.2d at 650–51.

Bearing in mind that *Harper* is the only Supreme Court case that considered involuntary medication, we believe it is clear that a reasonable institution could not have known what procedures were required before Sherman was medicated in 1989. As the Court noted in *Youngberg,* the Due Process Clause requires the state actor "to balance the liberty of the individual and the demands of an organized society." 457 U.S. at 320, 102 S.Ct. at 2460 (citations omitted). In analyzing qualified immunity cases, this court has stated that:

> [i]t would appear that whenever a balancing of interests is required, the facts of the existing caselaw must closely correspond to the contested action before the defendant official is subject to liability under *Harlow.* With *Harlow's* elimination of the inquiry into actual motivations of the official, qualified immunity

typically casts a wide net to protect government officials from damage liability whenever balancing is required. There may, of course, be a situation in which the defendant's actions are so egregious that the result of the balancing test will be a foregone conclusion, even though prior caselaw may not address the specific facts at issue.

*Rakovich,* 850 F.2d at 1213 (citing *Benson v. Allphin,* 786 F.2d 268, 276 & n. 18 (7th Cir.1986)). We have found no binding precedent, or even a clear consensus of opinion about what the Due Process Clause required in 1989. Nor do we find that Four County's actions were egregious, or even unwarranted.

Sherman states he received no process. This assertion is contradicted by the record. The district court, in considering the reasonableness of Four County's filing of its Report and Petition for Involuntary Commitment, found that there was undisputed evidence that during the first six days of his confinement, Sherman was examined by two psychiatrists and a psychologist. They determined that Sherman was a chronic paranoid schizophrenic. This diagnosis was informed by interviews with Sherman, his medical records, and his prior conduct. The doctors believed that he might be dangerous both to others and himself and that further medical treatment was necessary. 2/18/92 Order at 13.

Although he contests the relevancy of Four County's medical judgment that he is a chronic paranoid schizophrenic, *see* Reply Brief at 1, 13, Sherman concedes that a medical professional's decision to medicate may satisfy the requirements of due process set forth in *Harper.* Appellant's Brief at 28–29. Sherman's medication was in accordance with the medical judgments of Four County's staff. He presents no evidence that the decision to medicate him was not made by a medical professional, nor does he assert that Four County medicated him for non-medical reasons. The documents that Four County provided in support of its motion for Summary Judgment illustrate that Four County's staff believed Sherman was hostile and danger-

ous, and in need of medication. Indeed, that is why they asked the court to transfer him to Logansport State Hospital. *See* Progress Note of 3/30/89, Defendant's Exhibit A to Reply Memorandum in Support of Motion for Summary Judgment at 29, Pleadings Volume 2, Document Number 91. In the context in which it acted—medicating an apparently schizophrenic patient in emergency detention—we cannot say that Four County's actions were unconstitutional, much less so egregious as to bar Four County's assertion of qualified immunity. Consequently, we affirm the district court's grant of summary judgment and its conclusion that Sherman's claims are barred by Four County's qualified immunity.

### III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.